UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERIC COURTNEY and SARAH COURTNEY**<br><br>**Plaintiffs,**<br><br>v.<br><br>**BLAKE CAVALIER, THE CITY OF WALKER, LOUISIANA, and CHIEF DAVID ADDISON IN HIS CAPACITY AS CHIEF OF POLICE FOR THE CITY OF WALKER**<br><br>**Defendant.** | **CASE NO. 3:25-cv-280**<br><br><br>**JUDGE:**<br><br><br><br>**MAGISTRATE:** |

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes the plaintiffs, Eric Courtney and Sarah Courtney, persons of majority and domiciled in Livingston Parish, both personally file this Complaint based on the defendants' deprivation of Plaintiffs' constitutional right and infliction of injury related to the events of April 5, 2024 as described in more detail herein.

### JURISDICTION & VENUE

1.

This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the aforementioned statutory and constitutional provisions. In addition, Plaintiffs invoke supplemental jurisdiction over claims under state constitutional and statutory law pursuant to 28 U.S.C. §1367.

2.

Venue is proper with this Court as the Parish of Livingston is the parish where all factual events took place and where the defendant, City of Walker, is situated and the individual defendants are domiciled based upon information and belief. Furthermore, Plaintiffs are also domiciled in the Parish of Livingston.

**PARTIES**

3.

Named plaintiffs herein are

(A) **Eric Courtney** is a person of full age of majority and a resident of Walker, Louisiana in the Parish of Livingston and a citizen of the State of Louisiana.

(B) **Sarah Courtney** is a person of full age of majority and a resident of Walker, Louisiana in the Parish of Livingston and a citizen of the State of Louisiana.

4.

Named defendants herein are:

(A) **Blake Cavalier,** who is on information and belief, a citizen of the State of Louisiana and resident of the town of Walker in the State of Louisiana who was at the time of the events set forth herein employed by the **City of Walker ("City")** and **Police Chief Addison** as a police officer.

(B) **City of Walker** ("City"), political entity capable of suing and being sued, and a local governmental subdivision of the State of Louisiana which operates under a home rule charter and, subject to said charter, is authorized as hereinafter provided to exercise any power and perform any function necessary, requisite or proper, for management of its local affairs pursuant to its Home Rule Charter and Code of Ordinances

**(C) Chief David Addison** ("Chief"), a person of full age of majority and a resident of Louisiana, in his individual and official capacity as the Chief of Police for the Walker Police Department ("WPD"), a department of the City pursuant to Section 4-06 of the City of Walker's Home Rule Charter. As Chief of Police, Chief serves as the head of the police department. Accordingly, and at all times described herein, Chief was the ultimate policy-maker for WPD, and was responsible for the hiring, training, supervision, discipline and control of appropriate staff to maintain the peace, order, and protection of the City's residents. He was responsible for all uniform patrol staffing levels. He was also responsible for the supervision, administration, policies, practices, customs, and operations and training of WPD and its officers, including Defendant Chevalier and the other Walker police officers mentioned herein. Chief Addison, the chief of police for the City, was and is the final policy maker for WPD and at all pertinent times acted under color of law. He is liable both directly for the unconstitutional actions and vicariously for the state law actions complained of herein.

## FACTUAL ALLEGATIONS

5.

On or about April 5, 2024, Sarah Courtney awoke in the early morning hours. She immediately began looking for her young son Isaac Courtney. She woke Eric Courtney, and they began to search their home for the child. After noticing the back door open, Sarah and Eric Courtney found Isaac's lifeless body floating in their swimming pool. An emergency 911 call was made immediately.

6.

Several police officers were the first to respond to the emergency call at the Courtney home which was located at 12431 Three Lakes Drive, Livingston, 70785.

7.

After the uniformed police officers arrived at the Courtney residence. One officer took Isaac Courtney from Eric Courtney and exited the back yard with the minor child and took the child to a nearby hospital.

8.

Eric Courtney did not know that the Officer transported his son in his police unit to the closest hospital and believed that his son had died.

9.

Eric Courtney was not informed in any way about the whereabouts or capacity of his minor child. Eric Courtney was under the impression that Isaac Courtney was deceased.

10.

The remaining officer, defendant **Blake Cavalier** ordered that Eric Courtney come to the front of the home and the officer demanded that Eric Courtney provide identification.

11.

Sarah Courtney was present in the front yard of the home and was not approached or questioned by the officer.

12.

Eric Courtney was beyond distraught mourning the loss of his minor child and when he did not respond in a manner that officer Cavalier felt appropriate, Officer Cavalier became hostile to Mr. Courtney.

13.

Officer **Cavalier** aggressively confronted Mr. Courtney telling him to "sit down" and when Mr. Courtney did not immediately comply Officer Cavalier grabbed Mr. Courtney's shoulder with a shoulder lock maneuver throwing him to the ground. This maneuver has a well-known high risk of injury to the shoulder and should not be used except in exceptional circumstances and should not be used to compel an upset and distraught person who was not a threat to the officer to comply with a command.

14.

Mr. Courtney attempted to ask why they were attacking him and why would they treat someone in this manner when his child just died.

15.

Mr. Courtney was held prone on the ground as numerous other unknown officers came to assist Defendant Cavalier. It is alleged on information and belief that Officer Cavalier falsely communicated to the officers that he had been assaulted by Mr. Courtney and that Mr. Courtney needed to be subdued. Based on this communication these officers kneeled on top of Mr. Courtney and thrashed him with their knees and fists.

16.

Due to the noise and violent tones of the officers, the Courtneys' children, and Sarah Courtney, gathered to observe what was happening to Eric Courtney. The traumatic event and aggression displayed to Mr. Courtney and physically exerting force upon Mr. Courtney scared the children to tears. Sarah Courtney immediately began to plead with the officers not to hurt her husband.

17.

At the same time that Officers were crowded over Eric Courtney, they had him handcuffed, they struck him with their knees and struck him repeatedly in the torso and head area. It is alleged that the Walker Police officers were not properly trained to respect the rights of Mr. Courtney and exhibited deliberate indifference to the rights of Mr. Courtney and also the officers were not properly trained to deescalate the situation to protect the rights of Mr. Courtney.

18.

Sarah Courtney witnessed an unknown officer extract his uniform patrol-distributed TASER device and she exclaimed, "Do not TASE him." But the officer pointed the taser at Mr. Courtney and upon firing the device, the device made contact with and penetrated the skin of Mr. Courtney while he was face down on the ground, secured in handcuffs. It is alleged that the officers was not properly trained in the circumstances in which it is appropriate to use the TASER device and specifically were not trained that is inappropriate to use the TASER to administer discipline and not trained that it is settled law that under the Fourth Amendment courts have held that because a **taser** deployment is such a serious **use** of force, a police officer ordinarily may **use** a **taser** against a suspect only in "a situation in which a reasonable officer would perceive some immediate danger," and not to compel compliance with police commands. The lack of proper training resulted in a culture at WPD that was effectively a policy allowing the use of the TASER to compel compliance with police commands.

19.

Approximately 50,000 volts of electricity were disbursed throughout Mr. Courtney's body by Officer's TASER device.

20.

Upon seeing this and fearing what additional harm may come to her husband, Mrs. Courtney asked to console her husband exclaiming that their child had just died in a desperate and continued effort to deescalate the highly intense situation created by the officers and in an attempt to end the horrifying situation for their children, Mrs. Courtney pleaded with officers, asking to console him.

21.

Mr. Courtney was lifted to his feet by officers wherein they walked him toward a police unit. Officers then tripped Mr. Courtney and let him fall to the ground.

22.

Officers raised Mr. Courtney to his feet, then shoved Mr. Courtney into the police unit bashing his face and body upon the door frame of the unit.

23.

Upon observing Officer conduct, Mrs. Courtney became afraid for her husband's life.

24.

Mr. Courtney was transported to Livingston Parish Prison, wherein he was stripped and placed in a cell. Mr. Courtney asked why he was there, and guards told him it was "because he refused medical treatment." Until he was assaulted by the WPD officers, including Officer Chevalier, Mr. Courtney did not need any medical treatment.

25.

Mr. Courtney cried out to the prison staff pleading for help, explaining that he could not breathe and was having trouble breathing. Someone responded that if he could talk, that he could breathe.

26.

At some point, a person from the prison opened a small flap in the door and told Eric Courtney, "He has a pulse, it looks like he is going to make it."

27.

This was the first time that Eric Courtney had any knowledge that his son had the potential to live, and he was not certain at the time whether the officer was being honest or playing a cruel game.

28.

As Eric Courtney was held in the jail cell, he fretted over all the potential scenarios and the potential loss of spending time with his minor child during the child's last hours. He wondered if his child was alive, if officers had treated his wife the same way they had treated him, if his minor child was alone, and if there was even the slightest chance that Isaac was at the hospital, fighting for his life.

29.

As soon as Mr. Courtney was released from prison, he went to the children's hospital where Isaac Courtney was being treated. Medical personnel observed Mr. Courtney's condition and insisted that he seek treatment in the emergency room for the injuries inflicted by Officer Chevalier and the other WPD officers.

30.

As a result of the Officers' conduct and treatment, Mr. Courtney had to seek medical treatment for a fractured rib, multiple abrasions and contusions.

31.

The events of Mr. Courtney's arrest and the officers' unprofessional and violent behavior remain with the Courtneys, and they are now afraid of police officers.

32.

Mr. Courtney was accused of and arraigned on the criminal charges of resisting arrest by force or violence and was also accused of battery on Officer Chevalier and damage to the police car.

## CAUSES OF ACTION

33.

**COUNT I – 42 U.S.C. § 1983 violation based on *Monell* policy, practice, or pattern of inadequate training, supervision, and oversight of its police officers.**

Defendant Cavalier and the other Walker city police officers whose names ae not yet known, acting individually and together, under color of law, violated Plaintiffs' right to be free from intimidation, abuse of power, unlawful detention, unlawful arrest, excessive force and the right to due process and equal protection of the laws as protected by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

34.

The City and Chief Addison failed to train, supervise, and oversee Officer Cavalier and the other officers.

35.

Based upon information and belief, Officers have committed acts of unlawful behavior during their employment with WPD and within their scope of work as police officers. Plaintiffs

were individually harmed by the lack of training provided to Officers emergency protocols, de-escalation, TASER gun deployment, and excessive force.

36.

Similarly, the City and Chief failed to supervise the performance of their duties on behalf of WPD because those failures resulted in the tragic and traumatic events suffered by Plaintiffs as described herein.

37.

At all pertinent times, the defendants named in this Count, individually and collectively, including Defendant Chevalier, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Plaintiffs by failing to provide appropriate police training, supervision, and oversight and their conduct violated established law.

38.

**COUNT II – 42 U.S.C. § 1983 violation based on failure to train and supervise its police officers to ensure proper police practices for safety and wellbeing of citizens.**

Defendants City and Chief Addison failed to train and supervise their officers, including Defendant Cavalier and the other officers on the scene, to ensure that the officers did not abuse their authority to unlawfully threaten, intimidate, or harm members of the public, including the Courtney family.

39.

Plaintiffs were directly harmed by this failure to train and supervise because the lack thereof led to the known and repeated actions of the Defendant Officers, which caused physical, mental, and emotional harm to Plaintiffs, along with the false detention of Eric Courtney and false arrest of Mr. Courtney.

40.

At all pertinent times herein, Defendants City and Chief were aware of the need to train and supervise their officers in order to ensure that they did not violate such individuals' rights. The Defendants ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of Plaintiffs, as described above.

41.

**COUNT III – Unlawful detention by Officers in violation of the Fourth and Fourteenth Amendments.**

Plaintiffs were unlawfully detained at their home by Defendant Cavalier and the other officers without probable cause. Specifically, Officers entered the Plaintiffs' yard with instructions to assist in a drowning. There was no apparent or suspected threat to the officers at the property or otherwise by the Plaintiffs. Nevertheless, each Plaintiff was detained unlawfully by the officers during the officer's intrusion onto their property.

42.

**COUNT IV - Unreasonable seizure by Officers in violation of the Fourth Amendment.**

Defendant Chevalier and multiple Walker officers seized Mr. Courtney through physical force and deployment of a TASER in an effort to restrain Mr. Courtney's freedom. The officers restrained by physical means Mr. Courtney's ability to move as he lay already restrained on his front lawn. The officers including Defendant Cavalier handcuffed Mr. Courtney and then battered Mr. Courtney and then tased Mr. Courtney multiple times with the electricity from the TASER coursing through his body. However, at all times herein, Mr. Courtney posed no physical threat and sought only understanding from officers while mourning the loss of his child. At all times herein, Mr. Courtney was on his private property and requesting assistance from 911 emergency

services. The use of the taser to compel Mr. Courtney to comply with their demands was a violation of established law.

43.

**COUNT V - Excessive force by Officers in violation of the Fourth Amendment.**

Mr. Courtney endured physical injuries to his body as a result of the excessive uses of force by Defendant Cavalier and the other officers by way of use of the taser and physical actions from Defendant Cavalier and from the other unknown officers while Mr. Courtney posed no physical threat. At all times herein, Mr. Courtney was on his private property seeking emergency assistance for his minor child. The use of the TASER was unnecessary under the circumstances, excessive, and was utilized intentionally and with malice and in violation of established law.

44.

**COUNT VI - False arrest by Officers in violation of the Fourth Amendment.**

Officers never effected a lawful or formal arrest of Mr. Courtney; however, they placed Mr. Courtney into handcuffs, after he was thrust to the ground and battered by officers. He was transported to prison because according to officers, "he refused medical treatment."

45.

There was no probable cause to arrest Mr. Courtney, and he has not been convicted, pled, or undertaken other means of acquiescence to the charge of resisting an officer, which was the initial charge of arrest on the night made the subject herein.

46.

**COUNT VII – Bystander liability against Officers pursuant to 42 U.S.C. § 1983.**

During Officers' use of excessive force against Mr. Courtney, Officers did nothing to intervene or otherwise stop the unwarranted, unprovoked, and unlawful behavior of Officer

Cavalier and others whose identity is not yet known exhibited, and all officers had the ability, duty and knowledge to do so.

47.

**COUNT VIII – 42 U.S.C. § 1983 violation based on deliberate indifference to Mr. Courtney's Constitutional right to freedom from unlawful detention, unlawful seizure, excessive force, and false arrest by Officers.**

Officer Cavalier and the other unknown officers, acting individually and together, and under color of law, engaged in a course of conduct and conspired to engage in a course of conduct that acted to deprive Mr. Courtney his constitutional rights and deprived him of said rights, specifically, the right to be free from unreasonable seizure and excessive use of force, unlawful detention, false arrest, and the right to due process and equal protection of the laws as protected by Fourth and Fourteenth Amendments and Article IV (Privileges and Immunities Clause) of the United States Constitution and 42 U.S.C. § 1983.

48.

At all times pertinent herein, these defendants, acting individually and collectively, acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and disregard for the constitutional and civil rights of Plaintiffs. Furthermore, these defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Mr. Courtney, as described herein, but failed to do so.

49.

**COUNT IX – State Claim of Negligent and/or Intentional Conduct resulting in injury and emotional distress.**

The above-named defendants, acting individually and together, and under color of law,

engaged in a course of conduct and conspired to engage in a course of conduct that caused injury and harm to Plaintiffs and ultimately led to severe physical, mental, and emotional injury, unlawful seizure, unlawful detention, excessive use of force, and false arrest. At all times pertinent herein, these defendants, individually and collectively, acted intentionally, maliciously, recklessly, and/or negligently towards Plaintiffs and their welfare. The officers' actions constituted a gross deviation or breach from their duty as police officers, and such behavior violated all appropriate law enforcement protocol and procedure.

50.

Each of the Defendant's actions and inactions impute liability upon them pursuant to La. C.C. art. 2315, 2316, and 2317. Furthermore, Defendants, individually and collectively, had the duty and ability to intervene to prevent the tortious conduct of co-defendants toward Plaintiffs, as described herein, but failed to do so during the events made the subject herein. They are therefore liable to Plaintiffs, as described herein.

51.

**COUNT X – State Claims of *Respondeat Superior* Liability and Vicarious Liability of City.**

At all relevant times, the individually named defendants were acting in the course and scope of their employment with defendant City and defendant Chief of Police and the city and the Chief of Police are therefore liable under the doctrine of *respondeat superior* and La. C.C. art. 2320 for the actions and inactions of the individual defendants, as described herein.

52.

**COUNT XI – Loss of Consortium against all Defendants.**

All Defendants are liable to Eric and Sarah Courtney, pursuant to La. C.C. 2315(B) and 42 U.S.C. § 1983. Mrs. Courtney seeks relief under La. C.C. art. 2315(b) for loss of service, society, support, love and affection arising out of the injuries to her husband occasioned by the acts and/or omissions of the Defendants herein.

## INJURIES

53.

As a result of the actions of Defendants as described above, damages have been incurred as follows:

A. Eric Courtney suffered physical injury, conscious and severe physical, mental, and emotional distress, pain and suffering, false imprisonment, and humiliation.

B. Sarah Courtney suffered conscious and severe mental and emotional distress, pain and suffering, and humiliation.

## TRIAL BY JURY

54.

Plaintiffs respectfully pray for a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that after due proceedings there be judgment rendered herein in Plaintiffs' favor and against all defendants individually and jointly, as follows:

1. Compensatory and punitive damages as prayed for herein;
2. Reasonable attorneys' fees, as provided in 42 U.S.C. § 1988, 42 U.S.C. § 12205, and 29 U.S.C. § 794(b) and all costs of these proceedings and legal interest;

3. Punitive damages pursuant to 42 U.S.C. § 1983 and any other applicable statute;

4. Relief under La. C.C. arts. 2315 and 2321 from the intentional and/or negligent acts and/or omissions of the Defendants herein; and

5. All other relief as appears just and proper to this Honorable Court.

      **RESPECTFULLY SUBMITTED:**

      **STEVE IRVING, LLC**
      */s/ STEPHEN M. IRVING* (of counsel) T.A.
      Stephen M. Irving, Bar Roll No. 07170
      P. O. Box 2108
      Baton Rouge, Louisiana 70832
      Phone: (225) 752-2688
      Fax: (225) 752-2663
      Email: steve@steveirvingllc.com

      **JEN RACCA LAW**
      */s/ JEN RACCA*
      Jennifer M. Racca, Bar Roll No. 32925
      147 Saint Charles Street
      Baton Rouge, LA 70802
      Mobile: (225) 405-9789
      Office: (225) 248-1234
      Email: jen@jenraccalaw.com

      **MALEY LAW FIRM**
      */s/ MARTIN K. MALEY, SR.*
      Martin K. Maley, Sr., Bar Roll No. 20933
      PO Box 3154 (70821)
      4707 Bluebonnet Boulevard, Suite B
      Baton Rouge, LA 70809
      Telephone: (225) 346-6781
      Facsimile: (225) 346-6788
      Email: mkmaley@eatel.net

      ***Attorneys for Eric Courtney, Sarah Courtney***