# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ERIC COURTNEY, ET AL.**                                    CIVIL ACTION

**VERSUS**

**THE CITY OF WALKER,**
**LOUISIANA, ET AL.**                         NO. 25-00280-BAJ-RLB

## RULING AND ORDER

Before the Court is Defendants Blake Cavalier, the City of Walker, Louisiana, and David Addison's **Rule 12(b)(6) Motion to Dismiss Complaint (Doc. 12).** Plaintiffs oppose the Motion. (Doc. 14). Defendants filed a Reply Brief. (Doc. 16). For the reasons stated herein, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART.**

## I.    BACKGROUND

This case arises out of the alleged excessive force officers used on Plaintiff Eric Courtney, and Courtney's ultimate alleged false arrest, after officers responded to a drowning incident at his home. (Doc. 1). Plaintiffs Sarah and Eric Courtney allege the following.

On April 5, 2024, Sarah Courtney awoke in the early morning hours. (*Id.* ¶ 5). She immediately began looking for her young son. (*Id.*). Sarah Courtney woke her husband, Eric Courtney, to help her search their home for their child. (*Id.*). After noticing the back door open, Plaintiffs found their son's lifeless body floating in their swimming pool. (*Id.*). Plaintiffs immediately called 911. (*Id.*).

Several police officers responded to the emergency call at the Courtney home. (*Id.* ¶ 6). An officer took the Courtneys' son from Eric Courtney, exited the backyard with the minor child, and transported him to a nearby hospital. (*Id.* ¶ 7). Eric Courtney believed that his son had died and did not know that the officer transported him to the hospital. (*Id.* ¶ 8). Officers did not inform Plaintiffs regarding the whereabouts or capacity of their son. (*Id.* ¶ 9).

The remaining officer, Defendant Blake Cavalier, ordered Eric Courtney to come to the front of the home and provide identification. (*Id.* ¶ 10). Cavalier did not approach or question Sarah Courtney, despite the fact that she was also present in the front yard. (*Id.* ¶ 11).

Eric Courtney was distraught, mourning what he believed to be the loss of his minor child.[1] (*Id.* ¶ 12). When Courtney did not respond in a manner that Cavalier felt appropriate, Cavalier became hostile to Courtney. (*Id.*). Cavalier aggressively confronted Courtney, telling him to "sit down." (*Id.* ¶ 13). When Courtney did not immediately comply, Cavalier grabbed Courtney's shoulder with a shoulder lock maneuver and threw him to the ground. (*Id.*). This maneuver allegedly has a well-known high risk of injury to the shoulder. (*Id.*).

Courtney attempted to ask the officers why they were attacking him and why they would treat someone in this manner when his child just died. (*Id.* ¶ 14). Courtney was held prone on the ground as numerous other officers came to assist Cavalier. (*Id.* ¶ 15). Officers kneeled on top of Courtney and thrashed him with their knees and

---

[1] Throughout the remainder of this Ruling and Order, the Court will refer to Eric Courtney as "Courtney."

fists. (*Id.*).

Sarah Courtney and the Courtneys' other children observed this event, and the children were scared to tears. (*Id.* ¶ 16). Sarah Courtney pled with officers not to hurt her husband. (*Id.*). At the same time, officers were crowded over Courtney. They handcuffed him, struck him with their knees, and struck him repeatedly in the torso and head area. (*Id.* ¶ 17).

Sarah Courtney witnessed an officer extract his taser, and exclaimed, "Do not tase him." (*Id.* ¶ 18). The officer used his taser, which penetrated Courtney's skin while he was face down on the ground and secured in handcuffs. (*Id.*). Approximately 50,000 volts of electricity were disbursed through Courtney's body by the officer's taser. (*Id.* ¶ 19).

Sarah Courtney pleaded with officers that she be allowed to console her husband. (*Id.* ¶ 20). Officers lifted Courtney to his feet, tripped him, and let him fall to the ground. (*Id.* ¶ 21). Officers again raised Courtney to his feet, then shoved him into the police unit, bashing his face and body on the door frame of the unit. (*Id.* ¶ 22). Sarah Courtney became afraid for her husband's life. (*Id.* ¶ 23).

Officers transported Courtney to Livingston Parish Prison, where he was stripped and placed in a cell. (*Id.* ¶ 24). When Courtney asked why he was there, guards told him it was "because he refused medical treatment." (*Id.*). Courtney asked the prison staff for help, explaining that he was having difficulty breathing. (*Id.* ¶ 25). Guards told him that if he could talk, he could breathe. (*Id.*). Prison staff then opened a small flap in the door and told Courtney, "He has a pulse, it looks like he is going

3

to make it." (*Id.* ¶ 26). This was the first time Courtney learned that his son had the potential to live. (*Id.* ¶ 27).

Once released from prison, Courtney went immediately to the Children's Hospital. (*Id.* ¶ 29). Medical personnel insisted that Courtney seek treatment in the emergency room for the injuries officers inflicted on him. (*Id.*). Courtney suffered a fractured rib, multiple abrasions, and contusions. (*Id.* ¶ 30). Defendants strongly dispute the facts as alleged. (Doc. 16 at 2).

Courtney was later arraigned on criminal charges of resisting arrest by force or violence. (*Id.* ¶ 32). He was also accused of battery on Cavelier and damage to the police car. (*Id.*).

On April 4, 2025, Plaintiffs Eric and Sarah Courtney filed this lawsuit against: (1) Blake Cavalier, a Walker Police Department ("WPD") police officer; (2) David Addison, WPD chief; and (3) the City of Walker, Louisiana (the "City"). (Doc. 1). Plaintiffs allege the following causes of action:

(1) 42 U.S.C. § 1983 violation based on *Monell* policy, practice, or pattern of inadequate training, supervision, and oversight of its police officers (Count One);

(2) 42 U.S.C. § 1983 violation based on failure to train and supervise its police officers to ensure proper police practices for safety and wellbeing of citizens (Count Two);

(3) Unlawful detention by officers in violation of the Fourth and Fourteenth Amendments (Count Three);

(4) Unreasonable seizure by officers in violation of the Fourth Amendment

4

(Count Four);

(5) Excessive force by officers in violation of the Fourth Amendment (Count Five);

(6) False arrest by officers in violation of the Fourth Amendment (Count Six);

(7) Bystander liability against officers pursuant to 42 U.S.C. § 1983 (Count Seven);

(8) 42 U.S.C. § 1983 violation based on deliberate indifference to Courtney's constitutional right to freedom from unlawful detention, unlawful seizure, excessive force, and false arrest by officers (Count Eight);

(9) State law claims of negligent or intentional conduct resulting in injury and emotional distress (Count Nine);

(10) State law claims of *respondeat superior* liability and vicarious liability of the City of Walker (Count Ten); and

(11) Loss of consortium (Count Eleven).

(*See generally* Doc. 1).

Now, Defendants move to dismiss several of Plaintiffs' claims against them. (Doc. 12). For the following reasons, Defendants' Motion will be **GRANTED IN PART** and **DENIED IN PART.**

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft,* 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## III.   DISCUSSION

Defendants move to dismiss several of Plaintiffs' claims against them. First, the Court will analyze Plaintiffs' Section 1983 claims against the City. Second, the Court will turn to Plaintiffs' claims against Addison, in both his official and individual capacities. Third, the Court will assess Plaintiffs' claims against Cavalier. Fourth, the Court will determine the adequacy of Plaintiff Sarah Courtney's constitutional claims. Finally, the Court will consider Plaintiffs' right to pursue punitive damages.

6

### A. Plaintiffs' Section 1983 Claims Against the City.

Plaintiffs assert two theories of liability against the City under Section 1983: (1) policy liability; and (2) failure to train and supervise. Defendants move to dismiss both claims against the City, arguing that Plaintiffs' claims are barebones and conclusory, failing to satisfy the *Monell* standards for imposing liability on municipal entities. (Doc. 12-1 at 5, 7). For the following reasons, the Court agrees.

### i.   Policy Liability.

There are three elements of municipal liability under Section 1983: "[A] plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted), *cert. denied*, 583 U.S. 1014 (2017).

The first policy prong "includes the decisions of a government's law-makers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted); *Peterson v. City of Ft. Wor.*, 588 F.3d 838, 850–51 (5th Cir. 2009). To proceed beyond the pleading stage, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Peña v. City of Rio Grande City*, 879 F.3d 613, 621–22 (5th Cir. 2018).

7

Here, the only mention of a policy in Plaintiffs' Complaint is their allegation that "[t]he lack of proper training resulted in a culture at WPD that was effectively a policy allowing the use of the TASER to compel compliance with police commands." (Doc. 1 ¶ 18). Plaintiffs have failed to identify the existence of any particular policy that they claim was the moving force behind the alleged violation of Plaintiffs' constitutional rights in this case. And while an "official policy or custom" giving rise to *Monell* liability may be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy[,]" Plaintiffs "may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Smith v. Thibodeaux*, No. 23-CV-461-SDD-RLB, 2024 WL 1335649, at *7 (M.D. La. Mar. 28, 2024) (citing *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997); *Pudas v. St. Tammany Parish*, 2019 WL 2410939, at *3 (E.D. La. June 7, 2019); *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993) (internal quotation omitted; internal brackets omitted)). That is exactly what Plaintiffs have done here.

Plaintiffs argue that the facts, if proven, "establish a persistent widespread practice of violating the civil rights of persons who encounter police officers, including multiple illegal acts of summary discipline of [P]laintiff Eric Courtney done in the presence of his family." (Doc. 14 at 10). But to plausibly plead "a practice 'so persistent and widespread as to practically have the force of law,' a plaintiff must do more than describe the incident that gave rise to his injury." *Smith*, 2024 WL 1335649, at *7 (citing *Peña*, 879 F.3d at 622 (internal citations omitted)) (quoting *Connick*,

563 U.S. at 61). Because Plaintiffs have not alleged more than the facts describing the incident giving rise to their injuries, Plaintiffs' claim against the City based on an unconstitutional policy or custom must fail.

Accordingly, Defendants' Motion to Dismiss (Doc. 12) is **GRANTED** in this respect. Plaintiffs' Section 1983 claim against the City based on an alleged unconstitutional policy (Count One) is **DISMISSED WITH PREJUDICE**.

### ii. Failure to Train or Supervise.

A *Monell* claim may be based on a municipality's alleged failure to train, supervise, or discipline employees. *Peña*, 879 F.3d at 623. To state a claim for failing to supervise an employee, the plaintiff must allege "(1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting [these] deficient polic[ies], and (3) that the inadequate training, supervisory, or disciplinary polic[ies] directly caused the violations in question." *Hankins v. Wheeler*, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (citing *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020)).

"Deliberate indifference" can be demonstrated in two ways: "[f]irst and most often, deliberate indifference generally requires notice of a pattern of similar violations at the time the plaintiff's own rights were violated . . . Second, [the Circuit] has noted that in narrow circumstances, when a constitutional violation results as the highly predictable consequence" of a municipality's failure to properly hire, train,

9

supervise, or discipline, "the failure . . . can amount to deliberate indifference." *Robles v. Ciarletta*, 797 F. App'x 821, 833–34 (5th Cir. 2019).

As to the first method of showing deliberate indifference, the United States Court of Appeals for the Fifth Circuit has held that "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Livezey v. City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (internal quotation and citation omitted). Regarding the second method, the plaintiff must allege that the "highly predictable consequence of not supervising [the employees] was that they would" commit the specific constitutional violation alleged. *Peterson*, 588 F.3d at 850 (internal quotations omitted).

"An injury is 'highly predictable' where the municipality 'fails to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'" *Hankins*, 2022 WL 2208848, at *7 (internal brackets omitted) (quoting *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482–83 (5th Cir. 2021)). To establish liability for failure to supervise, it "must have been obvious that the highly predictable consequence of not supervising [the employees] was that they would" commit the specific constitutional violation alleged. *Peterson*, 588 F.3d at 850 (internal quotations omitted); *see also Smith*, 2024 WL 1335649, at *8.

Plaintiffs' Complaint contains the following allegations regarding the City's alleged failure to train or supervise WPD officers:

10

(1) The City and Addison failed to train, supervise, and oversee Cavalier and the other officers;

(2) Plaintiffs were individually harmed by the lack of training provided to officers concerning emergency protocols, de-escalation, TASER gun deployment, and excessive force;

(3) At all pertinent times, Defendants acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of Plaintiffs by failing to provide appropriate police training, supervision, and oversight and their conduct violated established law;

(4) The City and Addison failed to train and supervise their officers, including Cavalier and the other officers on the scene, to ensure that the officers did not abuse their authority to unlawfully threaten, intimidate, or harm members of the public, including Plaintiffs;

(5) Plaintiffs were directly harmed by this failure to train and supervise because the lack thereof led to the known and repeated actions of the officers, which caused physical, mental, and emotional harm to Plaintiffs, along with the false detention and arrest of Courtney.

(Doc. 1 ¶¶ 33, 35, 37–40).

Plaintiffs fail to allege with specificity how any training or supervision was deficient. Plaintiffs further fail to allege a pattern of similar constitutional violations by allegedly untrained officers at the time that Plaintiffs' rights were allegedly violated. Although a single incident can plausibly suggest deliberate indifference, the

11

Fifth Circuit has suggested that "the exception is generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624. Plaintiffs do not allege that WPD officers received no training whatsoever, and Plaintiffs otherwise do not ask the Court to invoke this exception in their briefing. Accordingly, Plaintiffs' Section 1983 claim against the City for failure to train or supervise must be dismissed. *See Smith*, 2024 WL 1335649, at *8 ("The Court finds that Plaintiff's official capacity claims must be dismissed. Plaintiff fails to identify a policy, explain specifically how any supervision was defective, and fails to allege any constitutional violation."); *Peña*, 879 F.3d at 623 (citing *Connick*, 563 U.S. at 62) (Because the "standard for [municipal] fault" is a "stringent" one, "[a] pattern of similar constitutional violations by untrained employees is ordinarily" required to show deliberate indifference.).

Defendants' Motion to Dismiss (Doc. 12) is **GRANTED** in this respect. Plaintiffs' Section 1983 claim against the City based on failure to supervise or train (Count Two) is **DISMISSED WITH PREJUDICE**.

### B.  Plaintiffs' Claims Against Addison.

Next, Defendants ask the Court to dismiss Plaintiffs' claims against Addison, the WPD chief, in both his official and individual capacities.

### i.    Official Capacity Claims Against Addison.

Defendants argue that Plaintiffs' official capacity claims against Addison fail for the same reason that Plaintiffs' claims against the City fail. (Doc. 12-1 at 9). Defendants argue that "Plaintiffs are bringing an official capacity claim against

12

Addison based on the same alleged unconstitutional policies for a failure to train, supervise, and monitor theory asserted against City." Because Plaintiffs have "failed to allege sufficient facts to set forth an underlying *Monell* violation by [the] City[,]" Defendants argue that Plaintiffs' *Monell* claims against Addison should be dismissed for this reason alone. (*Id.*).

Plaintiffs respond that their allegations are sufficient. Plaintiffs argue that "[t]he facts alleged [] establish the identity of the policy maker for the Town of Walker, [] Addison, and his dereliction of duty to supervise his officers and prevent them from violating the civil rights." (Doc. 14 at 10). Plaintiffs further argue that Addison "tolerated" the officers' allegedly unlawful behavior. (*Id.* at 9).

"An official capacity suit is the equivalent of a suit against the entity of which the officer is an agent. To determine whether a public official is liable in his official capacity, the Court looks to the jurisprudence discussing whether a municipality or local government entity is liable under section 1983." *Jordan v. Gautreaux*, 593 F. Supp. 3d 330, 353 (M.D. La. 2022) (citing *Romain v. Governor's Off. of Homeland Sec.*, No. 14-660, 2016 WL 3982329, at \*6 (M.D. La. July 22, 2016) (citations and quotations omitted)). Thus, for the same reasons described regarding Plaintiffs' Section 1983 claims against the City, Plaintiffs' claims against Addison in his official capacity must fail.

Defendants' Motion to Dismiss (Doc. 12) is **GRANTED** in this respect. Plaintiffs' Section 1983 claims against Addison in his official capacity (Count One, Count Two) are **DISMISSED WITH PREJUDICE**.

13

### ii.    Individual Capacity Claims Against Addison.

Defendants argue that Plaintiffs do not have a claim against Addison in his individual capacity under the Fourth Amendment based on Courtney's alleged unlawful arrest or the use of excessive force because Plaintiffs do not allege that Addison personally participated in the events alleged in the Complaint. (Doc. 12-1 at 13). Plaintiffs do not oppose Defendants' argument.

A valid individual capacity claim requires a Section 1983 plaintiff to "establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation." *James v. Tex. Collin Cnty.,* 535 F.3d 365, 373 (5th Cir. 2008). "Indeed, an officer must, in some way, personally deprive a Section 1983 plaintiff of his federal rights in order to incur liability in his individual capacity; respondeat superior liability is repugnant to the plain language of the statute." *La. Cleaning Sys. v. Brown*, No. CIV.A. 14-2853, 2015 WL 6869907, at *7 (W.D. La. Nov. 9, 2015).

Here, Plaintiffs do not allege that Addison personally participated in Cavalier's alleged constitutional violations. Plaintiffs do not even allege that Addison was present at the scene of the incident. *See Skinner v. Ard*, 519 F. Supp. 3d 301, 318 (M.D. La. 2021) ("Plaintiffs fail to allege that Sheriff Ard personally participated in Deputy McLin's constitutional violation. . . . [H]e is not even alleged to have been at the scene of Roscoe's shooting."). The Court has already dismissed Plaintiffs' claims against Addison for alleged policy liability and alleged failure to supervise or train.

14

Thus, Plaintiffs' individual capacity claims under the Fourth Amendment based on Courtney's alleged unlawful arrest or the use of excessive force must be dismissed.

Defendants' Motion to Dismiss (Doc. 12) is **GRANTED** in this respect. Plaintiffs' individual capacity claims against Addison under the Fourth Amendment based on Courtney's alleged unlawful arrest and the use of excessive force are **DISMISSED WITH PREJUDICE**.

### C.  Plaintiffs' Claims Against Cavalier.

Defendants also move to dismiss Plaintiffs' excessive force and false arrest claims against Cavalier.

### i.    Excessive Force Claim Against Cavalier.

Defendants ask the Court to dismiss Plaintiffs' excessive force claim against Cavalier based on qualified immunity. Specifically, Defendants argue that Plaintiffs cannot overcome qualified immunity for Cavalier's use of the "shoulder lock maneuver" to obtain compliance from Courtney. (Doc. 12-1 at 13).

Plaintiffs respond that the facts alleged in the Complaint, if proven, would defeat any qualified immunity defense. (Doc. 14 at 10). Plaintiffs argue that "Courtney was not being arrested; he was not even a suspect. There was no crime; [] Courtney was essentially a relative of a victim of a tragic accident." (*Id.* at 5). Plaintiffs argue that the law is clearly established that officers cannot: (1) tackle a subject when the subject was not attempting to flee; (2) continue to use force against Courtney while he was on the ground; or (3) use a taser to punish Courtney. (*Id.* at 5–7).

15

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). A public official is entitled to qualified immunity unless the plaintiff demonstrates that: (1) the defendant violated the plaintiff's constitutional rights; and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007)). The Supreme Court has held that courts have the discretion to determine which prong of qualified immunity should be analyzed first. *Pearson*, 555 U.S. at 236.

The Court has emphasized that "[t]his inquiry is undertaken in light of the specific context of the case, not as a broad, general proposition." *Thibodeaux v. Louisiana*, No. CV 24-00388-BAJ-SDJ, 2026 WL 161347, at *4 (M.D. La. Jan. 21, 2026) (internal citations omitted). It is a violation of the Fourth Amendment for an officer to use excessive or unreasonable force in the context of an arrest. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). To prevail on an excessive force claim, "[a] plaintiff must show (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness . . . was clearly unreasonable." *Collie v. Barron*, 747 F. App'x. 950, 952 (5th Cir. 2018) (citations omitted). Excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer in each case.

16

*Williams v. Sanders,* 723 F. Supp. 3d 467, 472 (M.D. La. 2024) (citing *Graham*, 490 U.S. at 396; *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

Relevant factors include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* When deciding whether to use force, officers must determine "not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Williams*, 723 F. Supp. 3d at 472 (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam); *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). The reasonableness of the officers' conduct cannot be judged with the benefit of hindsight, but must be assessed from the viewpoint of a reasonable officer on the scene at the moment the force is applied. *Williams*, 723 F. Supp. 3d at 472 (citing *Graham*, 490 U.S. at 396). Excessive force claims are "fact-specific." *Hammond v. Burns*, No. CV 18-00803-BAJ-RLB, 2020 WL 1442963, at *4 (M.D. La. Mar. 24, 2020).

Here, the Court finds that the facts alleged, accepted as true, may establish an excessive force claim that defeats qualified immunity. First, Plaintiffs have alleged an injury: Plaintiffs allege that Courtney suffered a fractured rib, multiple abrasions, and contusions. (Doc. 1 ¶ 30). Second, the alleged force Cavalier used on Courtney, accepted as true, was objectively unreasonable. In *Ramirez*, the Fifth Circuit affirmed the district court's denial of qualified immunity on plaintiff's excessive force claim where plaintiff "alleged he posed no threat to the officers and yet was tased twice,

17

including once after he was handcuffed and subdued while lying face down on the ground[.]" *Ramirez v. Martinez,* 716 F.3d 369, 379 (5th Cir. 2013). In *Bush,* the Circuit held that a police officer used excessive force that was objectively unreasonable and in violation of clearly established law when he forcefully slammed a suspect's face into a vehicle after subduing her and placing her in handcuffs. *Bush v. Strain,* 513 F.3d 492, 501–02 (5th Cir. 2008). In *Poole*, the Circuit held that the use of a taser was not excessive where the arrestee was resisting arrest and the officers ceased use of the taser once the arrestee was handcuffed and subdued. *Poole v. City of Shreveport,* 691 F.3d 624, 626 (5th Cir. 2012).

Here, Plaintiffs allege that they called for emergency assistance after finding their young child's limp body in the pool, believing that he had drowned. (Doc. 1 ¶ 5). While responding to the drowning incident at the Courtneys' home, officers allegedly grabbed Courtney's shoulder with a shoulder lock maneuver, threw him to the ground, and thrashed him with their knees and fists while kneeling on top of him. (*Id.* ¶¶ 13–15). While Courtney was face down on the ground and secured in handcuffs, Cavalier allegedly tased him. (*Id.* ¶ 18). Plaintiffs allege that officers lifted Courtney to his feet, tripped him, and let him fall to the ground. (*Id.* ¶ 21). Officers again raised Courtney to his feet, then allegedly shoved him into the police unit, bashing his face and body on the door frame of the unit. (*Id.* ¶ 22). Courtney was then transported to jail. (*Id.* ¶ 24). According to Fifth Circuit jurisprudence, the facts alleged, accepted as true, demonstrate use of force that was clearly excessive to the need which was objectively unreasonable.

18

The *Graham* factors support this finding. First, there was allegedly no crime at issue. Thus, the first *Graham* factor—the severity of the crime at issue—weighs in favor of Plaintiffs. Second, a reasonable officer could not have concluded that Courtney posed a threat after he was lying on the ground in handcuffs. *See Ramirez*, 716 F.3d at 378 ("[A] reasonable officer could not have concluded Ramirez posed an immediate threat to the safety of the officers by questioning their presence at his place of business or laying on the ground in handcuffs."). Thus, the second factor—whether the suspect poses an immediate threat to the safety of the officers or others—weighs in favor of Plaintiffs. Third, according to Plaintiffs, the only fact regarding Courtney's resistance alleged in the Complaint is that "Courtney did not immediately comply" because he was mourning the seeming loss of his child. (Doc. 1 ¶ 13). Thus, the third factor—whether plaintiff is actively resisting arrest or attempting to evade arrest by flight—weighs in favor of Plaintiffs. *See Ramirez*, 716 F.3d at 378 ("Pulling his arm out of Martinez's grasp, without more, is insufficient to find an immediate threat to the safety of the officers.").

Next, the Court must determine whether Plaintiffs' excessive force claim is defeated by qualified immunity. For the same reasons previously described, the Court finds that Cavalier's alleged actions, accepted as true, were objectively unreasonable in light of clearly established law at the time of the violation. *See Ramirez*, 716 F.3d at 377; *Bush,* 513 F.3d at 501–02; *Poole,* 691 F.3d at 626.

Defendants' Motion to Dismiss (Doc. 12) Plaintiffs' excessive force claim (Count Five) is **DENIED**.

### ii.    False Arrest Claim Against Cavalier.

Defendants also argue that Plaintiffs fail to state a false arrest claim because they did not plead facts showing a lack of probable cause for his arrest or that the charges against Courtney were ultimately resolved in his favor. (Doc. 12-1 at 15).

Plaintiffs respond that criminal charges remain pending against Courtney. Thus, Plaintiffs contend that these charges are not "mature" until the final disposition of the pending charges. (Doc. 14 at 1).

A review of the state court docket shows that the pending criminal charges against Courtney have not yet been resolved. This Court has stayed similar false arrest claims while criminal charges were pending. In *Guillory*, the Court emphasized, "Clearly, if the plaintiff is convicted of simple battery of a police officer, his section 1983 false arrest claim would be barred by *Heck* [*v. Humphrey,* 512 U.S. 477 (1994)], unless the conviction is reversed, expunged, or invalidated by a state tribunal." *Guillory v. Wheeler*, 303 F. Supp. 2d 808, 811 (M.D. La. 2004); *see also Collier v. Roberts*, No. CIV.A. 13-425-SDD, 2013 WL 5671154, at *2 (M.D. La. Oct. 15, 2013) ("Plaintiff's pending charges of resisting an officer and battery of a police officer are of a type and character that a conviction on these charges may bar this Section 1983 action."); *Wallace v. Kato,* 549 U.S. 384, 393–94 (2007) ("[I]f a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended."); *Santos v. White,*

20

No. CV 16-00598-BAJ-EWD, 2017 WL 5953290, at *4 (M.D. La. Dec. 1, 2017) ("When faced with uncertainty regarding whether adjudication of a § 1983 claim will impact a potential criminal conviction, courts in this Circuit have concluded that the civil proceeding should be stayed until the pending criminal case has run its course.").

Due to the uncertain resolution of the underlying criminal charges against Courtney, the Court finds it inappropriate to dismiss Plaintiffs' false arrest claim at this time. Defendants' Motion to Dismiss (Doc. 12) Plaintiffs' false arrest claim (Count Six) is **DENIED**.

### D. Sarah Courtney's Constitutional Claims.

Defendants argue that Sarah Courtney has failed to plead any facts showing that she was arrested or had any force used against her. (Doc. 12-1 at 13). Thus, Defendants contend that Sarah Courtney's constitutional claims must be dismissed. (*Id.*). Plaintiffs fail to oppose Defendants' arguments regarding Sarah Courtney's constitutional claims. (*See generally* Doc. 14).

Because the facts underlying Plaintiffs' constitutional claims pertain to Eric Courtney, and because Plaintiffs do not oppose dismissal of Sarah Courtney's constitutional claims, the Court will construe the constitutional claims as though asserted by Eric Courtney alone. Defendants' Motion to Dismiss (Doc. 12) is **GRANTED** in this respect.

21

**E. Punitive Damages Against the City and Addison in his Official Capacity.**

Finally, Defendants argue that Plaintiffs are not entitled to recover punitive damages from the City or Addison in his official capacity. (Doc. 12-1 at 16). Defendants contend that the City is immune from punitive damages under Section 1983. (*Id.*). Defendants also argue that Plaintiffs' claim for punitive damages against Addison in his official capacity must fail because it is the same as a suit against the government entity of which Addison is an agent. (*Id.*). Plaintiffs fail to oppose Defendants' arguments regarding punitive damages. (*See generally* Doc. 14).

The United States Supreme Court has long held that punitive damages cannot be awarded against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). This Court has previously held that "any claims seeking to recover punitive damages against any entity or individual who is being sued in its official capacity must be stricken from the pleadings as a matter of law." *Perron v. Travis*, No. CV 20-00221-BAJ-EWD, 2021 WL 1187077, at *4 (M.D. La. Mar. 29, 2021). Thus, Plaintiffs' claim for punitive damages against the City and Addison in his official capacity must be dismissed.

Defendants' Motion (Doc. 12) is **GRANTED** in this respect. Plaintiffs' claim for punitive damages against the City and Addison in his official capacity is **DISMISSED WITH PREJUDICE**.

22

### F. Remaining Claims.

In accordance with the previous discussion, Courtney's excessive force (Count Five) and false arrest (Count Six) claims remain. Additionally, Defendants' Motion does not address the following claims: (1) unlawful detention by officers in violation of the Fourth and Fourteenth Amendments (Count Three); (2) unreasonable seizure by officers in violation of the Fourth Amendment (Count Four); (3) bystander liability against officers pursuant to 42 U.S.C. § 1983 (Count Seven); (4) state law claims of negligent or intentional conduct resulting in injury and emotional distress (Count Nine); (5) state law claims of *respondeat superior* liability and vicarious liability of the City of Walker (Count Ten); and (6) loss of consortium (Count Eleven). Thus, these claims remain.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants Blake Cavalier, City of Walker, Louisiana, and David Addison's **Rule 12(b)(6) Motion to Dismiss Complaint (Doc. 12)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiffs' Section 1983 claims against the City of Walker (Counts One and Two) are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims against Addison, in his individual and official capacities (Counts One and Two), are **DISMISSED WITH PREJUDICE**.

23

**IT IS FURTHER ORDERED** that Plaintiffs' claim for punitive damages against the City and Addison in his official capacity is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the constitutional claims shall be deemed asserted by Plaintiff Eric Courtney alone.

**IT IS FURTHER ORDERED** that this matter be and is hereby **REFERRED** to the Magistrate Judge for entry of a Scheduling Order.

Baton Rouge, Louisiana, this 27th day of March, 2026

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**